AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Black Coolpad cellular telephone including any<br>removable storage media contained within the phone,<br>bearing ATF Property #000025 | )<br>)<br>)<br>)<br>)<br>)  Case No.  2:19-mj-419 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Coolpad cellular telephone SN 331YL188P0000526 including any removable storage media contained within the phone bearing ATF Property #000025.

located in the     Southern     District of     Ohio     , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment A to the Affidavit in Support of the Application, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | - Conspiracy to Commit an Offense Against the United States |
| 18 U.S.C. § 922(a)(5) | - Transferring Firearms to an Out-Of-State Resident |
| 21 U.S.C. § 846 | - Conspiracy to distribute, or dispense a controlled substance |

The application is based on these facts:

See Affidavit in Support of the Application, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Teresa Petit, Special Agent ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/22/2019

*Judge's signature*

City and state: Columbus, Ohio

Elizabeth A. Preston Deavers, U.S. Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

IN THE MATTER OF THE SEARCH OF
COOLPAD MANUFACTURED, (black)
CELLULAR TELEPHONE WITH SERIAL
NUMBER 331YL188P0000526, INCLUDING
ANY REMOVABLE STORAGE MEDIA
CONTAINED WITHIN THE PHONE,
BEARING ATF PROPERTY # 000025,
CURRENTLY LOCATED AT ATF
COLUMBUS I FIELD OFFICE, 230 WEST
STREET, SUITE 300, COLUMBUS, OHIO
43215.

Case No. _____

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER
## RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Teresa Petit, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property

described—an electronic device—which is currently in law enforcement possession, and the

extraction from that property of electronically stored information described in further detail in

Attachment A.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and

Explosives ("ATF"), and have been since May 2014.  I am a graduate of the ATF National

Academy Special Agent Basic Training Program and the Federal Law Enforcement Training

Center, Criminal Investigator Training Program.  As a result of my training and experience as an

ATF Special Agent, I am familiar with Federal criminal laws pertaining to firearms violations.

As a Special Agent, I am also authorized to carry firearms, execute warrants, make arrests for the offenses against the United States, and perform other such duties as authorized by law.

3.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. I did not, however withhold any information or evidence that would negate probable cause.

4.    Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that Isse ABDINOOR (hereinafter "ABDINOOR"), Abdirahim Mahmoud DUALEH (hereinafter "DUALEH"), Omar Sharif Mohamed HASSAN (hereinafter "O. HASSAN"), Mohamed MOHAMUD (hereinafter "MOHAMUD"), Mohamed Abdi HIRAD (hereinafter M. HIRAD), and others have committed the following violations of law: Title 18, United States Code, Section 554, that is, fraudulently and knowingly export or attempt to export from the United States any merchandise contrary to any law; Title 18, United States Code, Section 371, that is two or more persons conspire either to commit any offense against the United States; and Section 922(a)(5), that is to deliver firearm(s) to an unlicensed individual whose residence is in a state different from the transferor's and other unidentified co-conspirators. There is also probable cause to search the cellular telephone devices identified below for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment A. Moreover, as is explained below, there is further probable cause to search the cellular telephone device identified below for evidence related to violations of 21 U.S.C. § 846, that is conspiracy to possess with intent to distribute controlled substance(s).

### IDENTIFICATION OF THE DEVICE(S) TO BE EXAMINED

2

5.      The property to be searched are Coolpad manufactured cellular telephone, black in color with serial number 331YL188P0000526, including any removable storage media contained within the phone, bearing ATF property item # 000025 (hereinafter "the DEVICE"). The DEVICE is currently located at the ATF Columbus I Field Office, 230 West Street, Suite 300, Columbus, Ohio 43215. As explained below, the DEVICE was seized on April 26, 2019, during the lawful execution of a Federal search warrant at the location of 2204 N. 4th Street, Columbus, OH.

6.      The applied-for warrant would authorize the forensic examination of the DEVICE for the purpose of identifying electronically stored data particularly described in Attachment A.

## PROBABLE CAUSE

### A. Chronological Background Regarding Ongoing Firearms-Trafficking, and Narcotics Trafficking

7.      On approximately March 11, 2019, the Canada Border Service Agency (CBSA) came in contact with a white 2018 Toyota Camry, with Ohio license plate HNU3289. The vehicle is currently registered to ABDINOOR, at his last known address of 3180 Heathrow Court, Columbus, OH 43219. While ABDINOOR was not in the vehicle at the time of the encounter, the vehicle had been flagged for additional screening due to repeated border crossing attempts and irregular crossing patterns. The driver/sole occupant of the vehicle on March 11, 2019, was further identified as Shiiri JACKSON (hereinafter JACKSON), also from Columbus, OH. While JACKSON and the vehicle were in the secondary screening area, the CBSA discovered twelve (12) firearms with magazines concealed in the center compartment of the vehicle. JACKSON failed to declare the firearms during her screening by CBSA.

3

8.      Investigators learned that JACKSON was paid $350.00 U.S. currency to drive the vehicle to Toronto, Canada, and meet with an unknown individual. An individual simply known as "A.D." arranged the trip for JACKSON. Review of the crossing history of the aforementioned vehicle and the previous occupants, it is believed that "A.D." is further identified as Abdirahim Mahmoud DUALEH (hereinafter DUALEH). Investigators learned that ABDINOOR and DUALEH are friends. As recently as January 2019, ABDINOOR and DUALEH have been documented as traveling into the United States from Canada together.

9.      On approximately March 11, 2019, ATF initiated traces on each of the recovered firearms. A *firearm trace* is the tracking of a recovered crime gun's history, from its source manufacturer/importer through the chain of distribution, to the first non-licensed purchaser of the firearm. As the trace reports were completed each of the firearms were identified to have been sold to the first non-licensed purchaser in the state of Ohio. Investigators learned that several of those firearms were sold at the C&E Gun show at the Columbus Expo Center between February 23-24, 2019. More specifically, as identified on ATF Trace Report T20190087798, a Glock manufactured, model 19, 9mm caliber, semi-automatic pistol with serial number BEKC683, was sold to the original purchaser on December 28, 2018. The time-to-crime calculation for the recovery of the firearm was 73-days. Your affiant knows from training and experience that a 73-day time-to-crime is a short amount of time and is an indicator of firearm trafficking. Most individuals who purchase firearms retain them for extended periods up to years in length. Therefore, based on training and experience, whenever a firearm is recovered in a criminal offense shortly after it was purchased it is highly likely that the firearm was diverted to the criminal possession in some sort of firearm trafficking scheme. Your affiant, spoke with the original purchaser of the aforementioned firearm and learned that the firearm was sold at the

4

C&E Gun Show between the above dates. Investigators further learned that the firearm was sold to an individual described as male, "Muslim," who was carrying approximately six (6) other firearms of which he stated he had just purchased. When asked about the original purchaser's description of the individual as "Muslim," the original purchaser stated that the individual had a prayer cap on and did not seem to be from this country. The unknown individual displayed an Ohio Identification card and a Conceal Carry Weapons (CCW) permit when he purchased the firearm. In establishing a more recent transfer of the firearm from the original purchaser to the unknown individual, this brought the time-to-crime down to approximately 16-days. Based on training and experience, this short timeframe is a strong indicator that the unknown individual has a more direct involvement in the firearm trafficking scheme.

10. Investigators learned that ABDINOOR, as well as the other individuals identified above in Paragraph 4 (DUALEH, O. HASSAN, MOHAMUD, and M. HIRAD), among others, frequent a residence located at 2204 N. 4th Street, Columbus, Ohio. Pursuant to a search warrant obtained in Canada on a cellular phone seized from JACKSON, the residence on N. 4th Street was confirmed to be a central meeting location for ABDINOOR and his associates. Surveillance units have also confirmed numerous license plates registered to family members of the identified conspirators in this firearm trafficking scheme. Investigators obtained information from a reliable source of information that this group of individuals conducts narcotic trafficking and compiles the firearms obtained for this trafficking scheme at the residence located on N. 4th Street. This source has provided information in the past related to this investigation that has been found to be accurate. Surveillance units have observed heavy traffic in and out of the residence from individuals who do not stay for very long. Your affiant knows through training

5

and experience, and conversation with other law enforcement officers, that the patterns observed at the residence are an indicator of narcotics trafficking or other criminal activity.

11.     On approximately March 12, 2019, ABDINOOR contacted the Columbus Division of Police (CPD) to report that his vehicle had been stolen. He stated to CPD that he parked the vehicle on 6th Street, Columbus, OH between the dates of March 8-11, 2019. He reported to the Officers that he discovered his car keys were missing on March 11, 2019, and called several friends inquiring about the whereabouts of his keys. ABDINOOR stated that, after asking his friends for his car keys with no success, he walked to the last known place he parked his vehicle and discovered it was missing. ABDINOOR provided the CPD officers his cell phone number for any required follow up contact(s). The area where the vehicle was reported to have been stolen from was within blocks of 2204 N. 4th Street, Columbus, OH.

12.     On approximately March 13, 2019, CPD was contacted by an individual wanting to report a missing person. The missing person was identified as JACKSON, who had been in custody in Canada since March 11, 2019. While speaking to CPD, the person stated that JACKSON may have been stopped at the Canadian border trafficking in firearms, and that she had not been seen since.

13.     Investigators have identified numerous individuals who have traveled together to Canada with ABDINOOR or utilizing ABDINOOR's registered vehicle. Those additional individuals are, among others, Abdiaziz Said AHMED (hereinafter AHMED), Mursal Dahir HANDULE (hereinafter HANDULE), Halima Marshale ADAN (hereinafter ADAN), Sharmarke Mursal IGAL (hereinafter IGAL), and DUALEH. Investigators learned that the group was utilizing females to drive the load vehicle across the border and would follow shortly thereafter. A load vehicle is a reference to the vehicle that contains the secreted contraband, in this case

6

firearms. These individuals have been identified to drive various vehicles during their travel, including rental vehicles.

14.     On approximately April 20, 2019, the CBSA encountered a 2018 Toyota Camry as it attempted to enter Canada. The vehicle was operated by Natasha WOLLEY (hereinafter WOLLEY), the sole occupant.  WOLLEY exhibited behaviors and provided answers when questioned by the CBSA Agents that were indicators she may have contraband in her vehicle. WOLLEY was sent for a secondary screening.  While in secondary, CBSA located and recovered eleven (11) firearms concealed in the center console around the gear shifting mechanism.  WOLLEY failed to declare the firearms in her possession.  Investigators learned that an individual known as "Momo" arranged the travel for WOLLEY.  Investigators have reason to believe that "Momo" is further identified as Mohamed Abdulkadir MOHAMUD (MOHAMUD) also from Columbus, OH.

15.     On approximately April 23, 2019, in the late evening hours, the CBSA encountered a 2019 Toyota Camry with Kentucky license plate 489ZEJ.    The vehicle was operated by Shukria Abdi MOHAMED (hereinafter S. MOHAMED). S. MOHAMED exhibited behaviors and provided answers when questioned by the CBSA Agents that were indicators she may have contraband in her vehicle. S. MOHAMED was sent for a secondary screening. While in secondary, CBSA located and recovered ten (10) firearms concealed in the center console around the gear shifting mechanism.  S. MOHAMED failed to declare the firearms in her possession.  The vehicle was determined to have been rented from Thrifty Car Rental, in Columbus, Ohio, on April 23, 2019 at approximately 3:15pm.  The vehicle was rented by MOHAMUD.  He provided the residential address of 2657 Manor Hill Lane, Columbus, Ohio and a telephone number of (614) 500-2430, to Thrifty Car Company. Four (4) of the firearms

7

appear to have an after-market device installed that would enable the firearm to operate as a machinegun. A machinegun is defined as, "any weapon which shots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of a trigger. The term also includes the frame or receiver of any such weapon, any part designed and intended solely and exclusively or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under control of a person. " 26 U.S.C. § 5845(b).

16. According to border-crossing records, ABDINOOR has also traveled across the border within the last three months with O. HASSAN. Also according to border-crossing records, O. HASSAN has also traveled across the border with Farah HIRAD. Farah HIRAD's brother is Mohamed Abdi HIRAD, previously identified as M. HIRAD in Paragraph 4, above.

17. Relevant here, in the early morning hours of approximately April 24, 2019, CBSA encountered a 2019 black Toyota Camry with an Ohio temporary license plate of H850086. The occupants of the vehicle were further identified as M. HIRAD and Ibrahim F. ALI (hereinafter ALI). Investigators learned that M. HIRAD is the registered owner of the vehicle. Both individuals were sent for secondary screening because CBSA Agents recognized that the reason for travel was the same story provided by S. MOHAMED, who was interdicted the day before with the firearms. While in secondary, CBSA observed that contact information for "Momo" was stored in one of the telephones seized from M. HIRAD and ALI. In addition, investigators have previously identified a different vehicle registered to M. HIRAD that was used to cross the border—on January 23, 2019, a 2009 Acura TSX with Ohio temporary license plate H092070, with HIRAD and a Canadian citizen crossed the border into Canada.

8

18.    On approximately April 24, 2019, surveillance units observed a high volume of individuals in and out of a residence located at 2204 N. 4th Avenue, Columbus, OH. Multiple vehicle license plates were documented and determined to be registered to known associates of the conspirators. Continuing into the late evening hours, surveillance units observed a light colored SUV depart from the residence with numerous occupants. CPD attempted to conduct a traffic stop on the vehicle; however, it failed to comply with the signals/orders of the officer and fled from the stop. The vehicle could not be located until the following morning, at which time it was unoccupied.

19.    Investigators learned that some of the firearm trafficking activities may be directed by a Canadian citizen further identified as Shamaury WHITE (hereinafter WHITE), now located in the Toronto, Canada area. On approximately April 26, 2018, CPD arrested WHITE for an outstanding arrest warrant from Canada for the offense of Attempted Murder. WHITE was arrested at the location of 1975 Summit Street, Apartment C, Columbus, OH. WHITE was also found to be in possession of a firearm at the time of his arrest. WHITE was later extradited to Canada; however, the final disposition of the charge was dismissed. It should be noted that the location on Summit Street is less than half a mile away from the residence located at 2204 N. 4th Avenue, Columbus, OH, which was described above in Paragraphs 10 and 18.

20.    On approximately April 26, 2019, a Federal search warrant was executed at the location of 2204 N. 4th Avenue, Columbus, OH. There were multiple individuals located at the residence when the Columbus Police SWAT team entered the residence. Also, recovered from the residence was more than eight (8) ounces of suspected cocaine, two (2) firearms, scales, and other paraphernalia associated with narcotic trafficking. Your affiant knows through training and experience that more than eight (8) ounces of suspected cocaine is more than user amounts

9

of the suspected illegal narcotic. In addition, there were documents recovered from the residence associated to the target country for the illegal firearm trafficking. For example, one document recovered in the east bedroom of the residence, was a receipt dated March 16, 2019, for a money transfer into Canada.

21. On approximately April 27, 2019, your affiant and other investigators were working in a covert manner at the C&E Gun Show held at the Ohio Expo Center in Columbus, OH. Investigators observed a suspected straw purchase and approached all the involved parties for questioning. According to information learned from the involved parties, the straw purchase was organized by Abdirahman ABDIRAHMAN (hereinafter ABDIRAHMAN). Your affiant knows from training and experience, it is common for individuals who are prohibited from purchasing or possessing a firearm to use a straw purchaser to complete the retail transaction on their behalf or to acquire firearms from other unlicensed individuals. More specifically, a "straw" purchase is described as the acquisition of a firearm(s) from a dealer by an individual (the "straw"), done for the purpose of concealing the identity of the true intended receiver of the firearm(s). From training and experience, your affiant is aware that it is common for straw purchasers to receive a benefit of some type, in this situation, a monetary benefit, to assume the risk of purchasing the firearm. A total of four (4) firearms were seized from this interaction.

22. On approximately April 29, 2019, M. HIRAD was contacted at a point of entry to the United States by the Customs and Border Patrol (CBP) returning from Canada. He was the sole occupant of the vehicle. He was operating a black 2019 Toyota Camry with Ohio temporary tag H850086 (the same vehicle identified above in Paragraph 17). A search was conducted on his vehicle and no contraband was located. At the same time that M. HIRAD was crossing, another vehicle operated by Ali-yare ALI-YARE (hereinafter ALI-YARE), a Canadian citizen, attempted to

10

enter into the United States at a different gate. ALI-YARE provided conflicting statements to border agents and was denied entry into the United States. ALI-YARE told border agents he was going to visit his grandmother in Columbus, Ohio, however he could not answer where she lived and he had no personal belongs in the vehicle. ALI-YARE was operating a white Toyota Corolla, hatch back model, rental vehicle.

23.     On approximately April 30, 2019, ALI-YARE entered the United States through a different point of entry than the one where he was denied entry the previous evening.

24.     In the early morning hours of approximately May 1, 2019, ALI-YARE was encountered trying to return to Canada from the United States. CBSA deferred ALI-YARE for a secondary inspection. While in secondary inspection, six (6) firearms were recovered from the vehicle. ALI-YARE failed to declare the possession of those firearms to the CBSA agents. ATF initiated urgent firearm traces on those six (6) recovered firearms. Four of the six firearms were originally purchased in Columbus, Ohio or surrounding area; one of the firearms recovered from ALI-YARE had been reported as stolen in Columbus, OH. Your affiant knows through training and experience that a cluster of firearms with trace information to the same purchase area would indicate that Columbus, Ohio was the source location where the firearms were obtained and diverted to this firearms trafficking scheme.

25.     On approximately May 1, 2019, your affiant learned that M. HIRAD had returned to Toyota Direct to complete paperwork related to the sale of the aforementioned Toyota Camry with the Ohio temporary tag (see Paragraphs 17 and 22). M. HIRAD provided the telephone number of (614) 971-1094. Toyota Direct voided the sale of the vehicle and repossessed the vehicle from M. HIRAD. M. HIRAD removed his personal belongings from the vehicle and departed in an Uber

11

vehicle. Investigators followed the unwitting Uber vehicle to the address of 2895 Woodland Avenue, Columbus, OH. M. HIRAD entered the residence.

26.     On approximately May 10, 2019, investigators conducted a trash pull at the residence of 2895 Woodland Avenue, Columbus, OH. A search of the trash revealed numerous documents baring the name of "Mohamed HIRAD." Also, recovered in the trash were two (2) empty boxes of ammunition, more specifically a box for .40 caliber ammunition and a box for 9mm caliber ammunition. Investigators also located a clear plastic baggie containing eleven (11) blue and white pharmaceutical pills. A query of the markings on the pills revealed them to be schedule II amphetamines. Additionally, there was a single .40 caliber bullet recovered in the trash.

27.     Review of the border crossing data shows that individuals associated with this suspected trafficking conspiracy have crossed the border dating back to March of 2017.

28.     Investigators learned that DUALEH activated the "share my location" option on JACKSON's cellular telephone and then shared that link to his own telephone. By doing so this would have allowed him to identify the GPS location/progress of JACKSON and or the location of her telephone. This information was further supported after a Canadian search warrant was executed on JACKSON's cellular telephone and the location data was available.

29.     Additionally, the investigation indicates that the suspected traffickers utilize the smartphone application. "Snapchat," to communicate in regards to their plans and coordination. Snapchat is a messaging application that lets users exchange pictures and videos as well as text based comments.

30.     In sum, the investigation indicates the following regarding the suspected individuals involved in this firearm trafficking scheme: they are acquiring firearms in the

12

Columbus, Ohio and surrounding metropolitan area, and then secreting the firearms in vehicles and then smuggling them into Canada; they have utilized cellular telephones to communicate in regards to planning and furthering the firearm trafficking; and they have utilized cellular telephones to track other cellular telephones belonging to individuals who are traveling in the vehicles with the secreted firearms.

**B. The DEVICES' Relationship to the Alleged Illegal Activity**

31.     As noted above in Paragraph 20, on approximately April 26, 2019, a Federal search warrant was executed at the location of 2204 N. 4th Avenue, Columbus, OH. In addition to the items previously identified, law enforcement also recovered the cell phones identified in this requested search warrant from the residence of 2204 N. 4th Street, Columbus, OH during the execution of the Federal search warrant. The DEVICE(S) was recovered from the front or west bedroom of the aforementioned residence on the second floor. Investigators learned that HASSAN occupied this specific bedroom. Also found in the same bedroom, was a Glock manufactured firearm with an extended magazine, a shotgun, and approximately 255 grams of suspected cocaine, as well a digital scale, and packaging materials.

32.     The DEVICE is currently in the lawful possession of the ATF. While ATF might already have all necessary authority to examine the DEVICE, I seek this additional warrant out of an abundance of caution to be certain that an examination of the DEVICE will comply with the Fourth Amendment and other applicable laws.

33.     I know through training and experience that cellular telephone devices are commonly used to access social media such as the Instagram, Facebook, or SnapChat to receive and exchange messages related to unlawful acts.

13

34.     I also know through my training and experience, and in speaking with other law-enforcement officers, that cellular telephone devices are commonly used to arrange unlawful transactions—including the unlawful sale of firearms to prohibited persons; to facilitate those straw purchases through the exchange of photographs of the relevant firearms and proposed terms of payment; and to assist potential straw purchasers and intended recipients in meeting up with one another through use of the phone's GPS and mapping software and applications.

35.     In my training and experience, I know that the DEVICE(S) have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the DEVICE(S) first came into the ATF's possession. When the DEVICE(S) were seized, investigators powered it off or placed it into airplane mode to maintain its integrity.

36.     Moreover, relevant here, your affiant knows from training and experience that individuals commonly use their cell phones to send text messages, voice messages, video messages and other chat based or social media platforms to discuss and plan their criminal activities. Call logs, text logs, and content records showing such an arrangement are likely to still be on the DEVICE(S). Additionally, your affiant knows from training and experience that individuals take pictures of their firearms, narcotics, illegally derived proceeds and those pictures can be stored on the devices. In addition, cellular telephones are commonly in the physical possession of owners, meaning the phones often yield information as to where the conspirators may be meeting, secreting the firearms into vehicles, acquiring firearms for the purpose of diversion to the criminal market, or other actions in furtherance of the conspiracy. Location data stored on the DEVICE(S) is likely to show where the target cellular telephone was located during times of service, and that information, combined with other records, may display a time

14

that all identified telephone numbers for co-conspirators were in the same general area of one another. Your affiant therefore has probable cause to believe that information sought in this warrant will further establish the patterns of those involved in the conspiracy.

## TECHNICAL TERMS

37.     Based on my training and experience, I use the following technical terms to convey the following meanings:

     a.  Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

     b.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of

15

four numbers, each in the range 0–255, separated by periods (e.g., 121.56.97.178). Every computer or cellular telephone (beyond 2G technology) attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or cellular telephone may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

c. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

38. Based on my training, experience, and research, I know that the DEVICE(S) have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and personal digital assistant ("PDA"). In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

39. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the DEVICE(S). This information can sometimes be recovered with forensics tools.

16

40.    *Forensic evidence.* As further described in Attachment A, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the DEVICES were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the DEVICE(S) because data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

        a.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

        b.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

        c.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.    Whether data stored on a computer/cellular telephone is evidence may depend on other information stored on the computer and the application of knowledge about how a computer/cellular telephone behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

17

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

41. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the DEVICES consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the DEVICES to human inspection to determine whether it is evidence described by the warrant.

42. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

43. Based on my knowledge, training, experience, and the investigation to date, I further submit that there is probable cause to believe that the property to be searched as described contains evidence, as described in Attachment A, of a violation(s) of: Title 18, United States Code, Section 554, that is fraudulently and knowingly exporting or attempting to export from the United States any merchandise contrary to any law; Title 18, United States Code, Section 371, that is two or more persons conspiring to commit any offense against the United States; and Title 18, United States Code, Section 922(a)(5), that is delivering firearm(s) to an unlicensed individual whose residence is in a state different from the transferor's.

18

44.     Based on the foregoing, I request that the Court issue the proposed search warrant under Federal Rule of Criminal Procedure 41 to search the **DEVICE as described and to seize** those items set forth in Attachment A which constitute evidence, fruits, and instrumentalities of a violation(s) of 21 U.S.C. §§ 846, and 18 U.S.C. §§ 554, 371, and 922(a)(5).

Respectfully submitted,

Teresa Petit
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Subscribed and sworn to before me
on May 22, 2019:

Elizabeth A. Preston Deavers
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

1.      All records and information on the DEVICE described in the Affidavit in support

that constitutes evidence of a violation of 21 U.S.C. §§ 846, as well as 18 U.S.C. §§ 554, 371,

and 922(a)(5), involving Isse ABDINOOR, Abdirahim Mahmoud DUALEH, Omar Sharif

Mohamed HASSAN, Mohamed MOHAMUD, Mohamed Abdi HIRAD, the other individuals

named in the Affidavit in support of this warrant application, and other known and unknown co-

conspirators since January 1, 2017, to present, including the following:

     a.  lists of contacts and related identifying information;

     b.  photographs;

     c.  internet history;

     d.  GPS data;

     e.  Text messages or messages stored in other messaging platforms;

     f.  Data stored on the DEVICES through social media platforms to include,
        Facebook, Instagram, Snapchat, and other unnamed platforms similar in nature;

     g.  any information related to sources of firearms (including names, addresses, phone
        numbers, or any other identifying information);

     h.  any information related to destination sources of firearms (including names,
        addresses, phone numbers, or any other identifying information);

     i.  any information recording the schedule or travel from 2017 to the present related
        to the user(s) of the DEVICE(S);

     j.  all bank records, checks, credit card bills, account information, and other financial
        records;

     k.  Stored electronic mail messages;

2.　　Evidence of user attribution showing who used or owned the DEVICE(S) at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history; and

3.　　Records evidencing the use of the Internet Protocol address to communicate with unnamed servers, including:

　　　　a.　records of Internet Protocol addresses used; and

　　　　b.　records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

4.　　As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.